UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

—————

SAM SMITH, III,

                Plaintiff,              Case No. 2:10-cv-235

v.                                    Honorable Robert Holmes Bell

UNKNOWN EYKE et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss for failure to state a claim Plaintiff's claims and Defendants Yoak, Bauman, Eyke and Contreras. The Court will serve the complaint against Defendants Vollick, Smith, Schroeder, and Olson.

## Discussion

### I.     Factual allegations

Plaintiff Sam Smith, III presently is incarcerated at the Alger Maximum Correctional Facility (LMF), though the actions about which he complains also occurred while he was housed at the Newberry Correctional Facility (NCF) and the Kinross Correctional Facility (KCF). Plaintiff sues the following Defendants: LMF/NCF Psychologist (unknown) Eyke; KCF Corrections Officers (unknown) Vollick, (unknown) Smith, and (unknown) Schroeder; LMF Inspector (unknown) Contreras; LMF Librarian Janice Yoak; LMF Warden Catherine Bauman; and KCF Assistant Deputy Warden (ADW) Kathy Olson.

In January 2010, while Plaintiff was housed at KCF, he informed prison officials about the location of certain weapons hidden by other prisoners. In order to protect Plaintiff from the risk of retaliatory assaults by those prisoners, Plaintiff was transferred to NCF on January 27, 2010. When he arrived at NCF, Plaintiff felt safe enough to report that he had been sexually abused by KCF Officer D. Cushman on several occasions between October 2009 and January 2010. After he reported the incidents, Plaintiff was placed in a suicide-watch cell, which prevented him from having any personal property except his underwear, a smock, a special blanket, and a mattress. Plaintiff alleges that, contrary to prison policy, Defendant Eyke did not interview Plaintiff for five days. Before Eyke's interview with Plaintiff on February 1, 2010, Plaintiff had received warnings from unspecified prison officials that he should drop his allegations of sexual abuse or risk retaliation. On February 2, 2010, Eyke caused Plaintiff to be transferred to LMF, a higher security prison.

Following his transfer to LMF, Plaintiff did not receive his court documents for 23 days. On the day he arrived at LMF, Plaintiff wrote to Defendant Investigator Contreras, renewing his allegations about Cushman's sexual abuse and complaining about the retaliatory actions taken by NCF officials. Plaintiff asked Contreras to contact the Michigan State Police. Plaintiff received no response from Contreras.

On February 17, 2010, Plaintiff himself wrote to the Michigan State Police about the sexual abuse. Plaintiff wrote a grievance against Contreras on March 17, 2010, alleging that Contreras had declined to investigate the complaint for sexual abuse

On April 21, 2010, the St. Clair County Circuit Court dismissed Plaintiff's complaint for paternity of his child. Plaintiff attempted to research Michigan probate law in order to mount an appeal, but LMF did not have either the statutes or a treatise about probate law in its library. Plaintiff requested that Defendants Yoak and Bauman either obtain the books or transfer Plaintiff to a facility that carried such materials. Yoak and Bauman denied the request, stating that the MDOC's list of required legal materials did not include the requested resources. As a result of Yoak's and Bauman's denials, Plaintiff was unable to appeal the dismissal of his paternity case.

Plaintiff alleges that, on May 4, 2010, the LMF mailroom staff opened and read outside Plaintiff's presence certain clearly marked legal mail from the 31st Circuit Court. Plaintiff alleges that the mailroom policy was performed at the direction of Defendant Bauman. He further alleges that Bauman authorized Plaintiff's transfer back to KCF on May 19, 2010. According to Plaintiff, Bauman was aware that Plaintiff alleged that he had been sexually abused at KCF and that Plaintiff had been an informant while at KCF. Plaintiff claims that he feared for his safety when he was transferred.

When he arrived at KCF, certain officers were upset about Plaintiff's allegations against KCF Officer Cushman. Defendant Vollick gave Plaintiff a direct order to bunk in the general population. Plaintiff refused the order, ostensibly fearing for his life. Vollick wrote a major misconduct for disobeying a direct order. Plaintiff was found not guilty of the misconduct, because Plaintiff had been granted a protection request on January 21, 2010, and there was no indication that the order had been rescinded or become unnecessary. When Plaintiff refused to bunk in the general population, he was handcuffed and escorted by Defendant Smith to segregation. On the way, they approached a large group of inmates. Because he did not know if any of the inmates he had reported were present, Plaintiff stopped walking and asked Smith to call for additional officers. Defendant Smith gave Plaintiff a direct order to continue walking, but Plaintiff refused. Smith issued a major misconduct ticket for disobeying a direct order. He was found guilty of the misconduct because "compliance with the order would not have created a significant risk of serious harm to the prisoner." (Compl., ¶ 46, Page ID#9.) Plaintiff was kept in segregation for the next 28 days.

On May 25, 2010, Defendant ADW Olson spoke with Plaintiff, expressing her anger at Plaintiff's filing of the sexual-abuse complaint about Cushman. Olson also told Plaintiff that she did not care that she had granted Plaintiff protection four months previously, before Plaintiff made his sexual abuse complaint. Olson gave Plaintiff the choice to go to KCF general population or be moved to a higher security facility. On May 28, 2010, ADW Harwood granted Plaintiff's continued protection and authorized a transfer to a Level II facility. However, on June 4, 2010, Olson disregarded Harwood's action and authorized Plaintiff's transfer to a Level IV facility.

On June 9, Defendant Schroeder, in cooperation with Defendant Olson, ordered Plaintiff to a non-protection cell with general population inmates at Kinross. Plaintiff refused to go,

and Defendant Schroeder issued a major misconduct ticket for disobeying a direct order. Defendant Olson transferred Plaintiff back to LMF, a Level IV facility. At the June 25, 2010 hearing on the misconduct ticket, Plaintiff was found not guilty of the charge because KCF did not demonstrate that Plaintiff no longer required protection. Now that Plaintiff is back at LMF, Defendants Yoak and Bauman continue to deny him access to legal materials on probate matters.

In Count I of his complaint, Plaintiff alleges that Defendants Eyke, Yoak, Bauman, Olson, Vollick, Smith and Schroeder all retaliated against him in violation of his First Amendment rights. In Count II, Plaintiff alleges that Defendants Eyke, Bauman, Yoak and Olson denied him legal materials about probate matters, thereby denying him access to the courts. Count III alleges that Defendants Vollick, Smith, and Schroeder, acting with deliberate indifference, took actions that placed Plaintiff at significant risk of harm. Count IV alleges that Defendant Contreras violated his statutory and administrative duties to properly investigate Plaintiff's claim of sexual abuse. In Count V, Plaintiff alleges that Defendant Eyke violated his statutory and administrative duties and to act with reasonable care in examining Plaintiff within 24 hours of being placed on suicide watch. Plaintiff alleges in Count VI that Defendant Bauman breached his statutory and administrative responsibilities to use reasonable care to operate the prison mails, and he vaguely alleges that Bauman's failures were retaliatory. Count VII of the complaint alleges that Defendant Olson breached her statutory and administrative duties in reclassifying and transferring Plaintiff. He further alleges that Olson retaliated against him when she ordered Plaintiff moved to the general population at KCF. Finally, Plaintiff alleges that Defendant Bauman unlawfully caused her subordinates to open and read Plaintiff's privileged mail outside his presence.

For relief, Plaintiff seeks $5 million in compensatory damages, together with preliminary and permanent injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Access to the Courts

Plaintiff alleges in Count II of his complaint that he was denied access to the courts because Defendants Eyke, Yoak, Bauman and Olson refused to obtain materials concerning Michigan probate law that would have permitted him to research and possibly challenge the dismissal of his paternity action. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Supreme Court further noted that, in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the

shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Plaintiff does not allege that he has suffered injury to his ability either to attack his conviction or challenge the conditions of confinement. Instead, he alleges that Defendant failed to

provide probate materials in the prison library, affecting his paternity appeal. As a result, he fails to allege the deprivation of a right protected by the First Amendment. The lack of probate materials is merely an incidental and constitutional consequence of his incarceration. *Lewis*, 518 U.S. at 355. Plaintiff therefore fails to state an access-to-the-courts claim against Defendant Eyke, Yoak, Bauman or Olson.

## B.    Prison Mail

Plaintiff alleges that, on May 4, 2010, unspecified LMF mailroom staff wrongfully opened and read his clearly marked legal mail from the 31st Circuit Court of Michigan, in violation of his First Amendment rights. He states in a conclusory fashion that the action was done at the direction of Defendant Warden Bauman. (Compl., ¶ 33, Page ID#8) He subsequently indicates, however, that the basis of his conclusory allegation is Bauman's supervisory responsibility for the operation of the prison and the proper implementation of policy. (Compl., ¶ 75, Page ID#13.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Bauman

engaged in any active unconstitutional behavior to interfere with his legal mail. Accordingly, he fails to state a First Amendment claim against Bauman.

## C.     Failure to Investigate and Initiate Prosecution

Plaintiff asserts that Inspector Contreras had a duty to investigate his complaint of sexual abuse and to report the complaint to the Michigan State Police for prosecution. To the extent that Plaintiff complains that Defendant Contreras failed to investigate his complaints and grievances, Plaintiff fails to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Further, to the extent that Plaintiff alleges that Defendant Contreras violated his constitutional rights because he failed to pursue a criminal prosecution of Cushman, Plaintiff fails to state a claim. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Simply put, Plaintiff cannot compel a criminal prosecution of Defendant Contreras because private citizens, whether or

not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).

Because the failure to investigate or prosecute Plaintiff's sexual-abuse allegations is the only conduct alleged against Defendant Contreras, Contreras is entitled to dismissal from the action.

### D.      Eighth Amendment

Plaintiff makes a variety of claims implicating the Eighth Amendment. First, he complains that Defendants Vollick, Smith, Schroeder, Bauman and Olson demonstrated deliberate indifference to a serious risk of assault to Plaintiff by attempting to place Plaintiff in the general population at KCF, the institution at which he served as an informant. Second, he appears to allege that Defendant Psychologist Eyke violated his rights under the Eighth Amendment by failing to interview him within 24 hours after he was placed in a suicide-watch cell.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*,

452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

### 1. Failure to Protect

Plaintiff alleges that Defendants Vollick, Smith, Schroeder, Olson and Bauman violated his Eighth Amendment rights by attempting to place him in the general population at a prison at which he previously had experienced sexual assaults by a guard and had informed on other prisoners. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that someone would cause a prisoner serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The deliberate-indifference standard comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834; *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501

U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837.

Defendants Vollick, Smith, Schroeder, Olson were all employed at KCF and were involved in the attempts to place Plaintiff into the general population. The Court concludes that Plaintiff has sufficiently alleged an Eighth Amendment claim against these Defendants.

Plaintiff's Eighth Amendment claim against Bauman, in contrast, is unsupported. Bauman is the Warden at LMF. Plaintiff apparently intends to allege that Bauman's decision to transfer Plaintiff back to KCF amounted to deliberate indifference to Plaintiff's safety. Accepting Plaintiff's allegations that Bauman was aware that Plaintiff claimed to have been sexually abused at KCF and that Plaintiff had served as an informant at KCF, those actions had occurred not later than January 2010. It is far from apparent that Plaintiff's placement at KCF on May 19, 2010 would expose him to a substantial risk of serious harm by the prisoners previously angered by his actions. Moreover, like other facilities, KCF was fully equipped to provide protective housing for at-risk prisoners. Bauman would have no reason to know that KCF officers would place Plaintiff in a unit with prisoners involved in the prior episode. In addition, Plaintiff makes no allegation that he continued to be at substantial risk of serious harm from Officer Cushman, whose alleged prior actions already had been reported. Plaintiff therefore fails to allege sufficient facts to support an inference that a substantial risk of serious harm existed or that Bauman appreciated that risk. Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Bauman.

2.        Failure to provide psychological evaluation

Plaintiff suggests that Defendant Eyke violated the Eighth Amendment by failing to interview him within 24 hours after he was placed in a suicide cell. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

As with other Eighth Amendment claims, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

- 14 -

Plaintiff makes no allegations that he had a sufficiently serious and immediate medical issue or that was in any way harmed by the delay in a psychiatric interview. Indeed, Plaintiff does not even allege that he was suicidal; he appears to complain only that his placement in the suicide-watch cell deprived him of activities and possessions. Plaintiff's allegations therefore fail entirely to support an inference that Eyke was deliberately indifferent to his serious medical needs.

Further, to the extent that Plaintiff suggests that being required to stay in a suicide-watch cell for five days was cruel and unusual punishment, he also fails to state a claim. The discomforts and inconveniences of being confined to a suicide cell are simply not "conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, Plaintiff's discomfort was temporary. Allegations about temporary inconveniences, e.g, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F.Supp.2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)); *but see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

As a result, Plaintiff's Eighth Amendment claim against Defendant Eyke fails to state a claim.

### E.     Abuse of Process

Plaintiff alleges in Counts IV through VII that various Defendants committed "abuse of process" by failing to follow state statutes and administrative law in investigating his complaints, interviewing him within 24 hours of being placed in a suicide cell, using reasonable care in the prison mail process and transferring Plaintiff to other prison facilities. Defendants' alleged failure to comply with a statute, administrative rule, or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff intends to allege that the state statutes and rules provide him a liberty interest in seeing the rules followed, he fails to state a due process claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S.

454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Here, Plaintiff clearly has failed to suggest that any Defendant's refusal to follow any of the cited rules imposed an atypical and significant hardship upon him. Plaintiff has no liberty interest in the rules governing investigation of grievances, the time for scheduling a psychological examination, supervision of prison mail, or the prison transfer process. He therefore fails to state a due process claim against any Defendant.

### F. Retaliation

Plaintiff alleges that the actions of Defendants Eyke, Yoak, Bauman, Olson, Vollick, Smith and Schroeder were taken in retaliation for Plaintiff's complaint that KCF Officer Cushman sexually abused him between November 2009 and January 2009. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an

adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff therefore has properly alleged the first element of a retaliation claim. His claims against Defendants Bauman, Yoak and Eyke, however, are wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL

35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff alleges that Defendant Bauman, who is Warden of LMF, retaliated against Plaintiff for filing a grievance about Officer Cushman, who works at KCF. Plaintiff's grievance was filed at yet another facility, NCF, before Plaintiff arrived at LMF. Plaintiff has not presented any facts that would support an inference that the warden of one facility would retaliate against a prisoner because the prisoner filed a grievance at another facility against an officer at yet a third facility. Plaintiff does not allege a relationship between Bauman and Cushman, nor does he allege that Bauman made retaliatory comments. Moreover, Bauman's decision to transfer Plaintiff occurred nearly five months after Bauman first raised his grievance. In sum, Plaintiff's allegation that Bauman had a retaliatory motive is wholly unsupported.

Similarly, Plaintiff's allegation that Defendant Eyke acted with a retaliatory motive is similarly unsupported. Defendant Eyke is a psychologist at NCF, who also works at LMF. Eyke telephonically conducted a psychological interview of Plaintiff while he was in the NCF suicide-watch cell, and Eyke ultimately recommended that he be transferred to LMF. Again, Plaintiff alleges no connection between Eyke and Cushman, and they worked at different facilities. While he alleges that certain NCF custody officers made comments to him about his complaint of sexual abuse, he does not allege that Eyke participated in those comments or even was aware of them. Indeed, Plaintiff's principal complaint about Eyke was that she was not at NCF for the five days he was in a suicide-watch cell. Plaintiff therefore has failed to make factual allegations that would support an inference of retaliatory motive. He therefore fails to state a retaliation claim against Defendant Eyke.

The only allegation against Defendant Yoak is that, as the LMF librarian, she did not provide him access to materials that the prison did not possess. Plaintiff alleges no fact that would support an inference of a retaliatory motive. In fact, his own allegations conclusively demonstrate that the materials were denied to him because the prison did not have them and was not constitutionally required to have them. Plaintiff therefore fails to state a retaliation claim against Defendant Yoak.

Upon review, the Court concludes that Plaintiff has sufficiently alleged a claim of retaliation against Defendants Vollick, Smith, Schroader and Olson.

## G.    Motion for Preliminary Injunction

Also pending before the Court is Plaintiff's motion for preliminary injunction. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). The party seeking

injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington- Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not and cannot make the requisite showing. Plaintiff claims that the constitutional right of access to the courts is well established and that Defendants continue to deprive him of access to probate materials. He therefore contends that he has a substantial likelihood of success on the claim. Inasmuch as the Court has concluded that Plaintiff's access-to-the-courts claim should be dismissed for lack of merit, Plaintiff cannot show a substantial likelihood of success on that claim. Moreover, none of the other factors weighs in Plaintiff's favor. Plaintiff therefore is not entitled to preliminary injunctive relief.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Yoak, Bauman, Eyke and Contreras will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Vollick, Smith, Schroeder, and Olson. Plaintiff's motion for preliminary injunctive relief will be denied.

An Order consistent with this Opinion will be entered.

Dated: April 20, 2011                                  /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE